UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

INDUSTRIAL MARITIME CARRIERS, L.L.C.,

    Plaintiff,

v.

RAVEN OFFSHORE YACHT SHIPPING, LLP,
    *in personam*,

    and

A CARGO OF THE MOTOR AND SAILING YACHTS
OCEAN LIBERTY; LONGSHOT; OASIS; TOP DOG;
ANDIAMO; KODIAK (EX CATHERINE QUIGG);
UNNAMED COASTAL MODEL YACHT;
UNNAMED WESTPORT MODEL YACHT #1;
UNNAMED WESTPORT MODEL YACHT #2; and
THEIR RESPECTIVE APPURTENANCES, GEAR,
TACKLE, AND EQUIPMENT,
    *in rem*,

    Defendants.
_____/

## VERIFIED COMPLAINT

1.    This is an action within this Court's admiralty jurisdiction pursuant to 28 U.S.C. §1333, Supplemental Rule C, and Fed. R. Civ. P. 9(h).

2.    Jurisdiction and venue are proper in this Court because the *in rem* defendant, a cargo of motor and sailing yachts on cradles, will be located in Port Everglades, State of Florida, which is within this District, while the action is pending. Specifically, the cargo is currently onboard the M/V OCEAN GLORY, en route to Port Everglades, and scheduled to arrive there on Sunday, October 16, 2016.

3. At all times material, Plaintiff, Industrial Maritime Carriers, L.L.C. (hereinafter referred to as "IMC"), was a limited liability company organized and existing under the laws of the State of Louisiana, with its principal place of business in Houston, Texas.

4. At all times material, Defendant, Raven Offshore Yacht Shipping, LLP (hereinafter referred to as "Raven Offshore"), was a limited liability partnership with, upon information and belief, its principal place of business in Seattle, Washington.

5. At all times material, non-party Intermarine, L.L.C. (hereinafter referred to as "Intermarine"), was a limited liability company organized and existing under the laws of the State of Louisiana, with its principal place of business in Houston, Texas, and which was at all relevant times the general managing agent for IMC.

6. At all times material, non-party United Chartering, Ltd. (hereinafter referred to as "United Chartering"), was a foreign company or similar business entity with its principal place of business in Vancouver, British Columbia, Canada, and which at all relevant times acted as the broker for Raven Offshore.

7. On or about September 2, 2016, Raven Offshore, as charterer, and IMC, as owner, operator and carrier, entered into a booking through their respective agents, United Chartering and Intermarine, for the ocean transport of nine (9) motor and sailing yachts on cradles (the "Cargo"), through a Gencon voyage charter party and governing clean recap, aboard the OCEAN GLORY from Nanaimo, British Columbia, Canada, to Port Everglades, State of Florida. *See* Charter Party and Recap (the "Charter"), attached hereto as "Exhibit A." The terms and conditions of the Charter are pled herein as if copied *in extenso*.

8. The Cargo of nine (9)[1] motor and sailing yachts is more particularly described as follows:

| | **Vessel Name (if any)** | **Description** |
|---|---|---|
| 1. | OCEAN LIBERTY | "Kadey Krogen" model yacht, hull series number CBK52001H112 |
| 2. | LONGSHOT | "Offshore" model yacht, hull series number OSH58021D898 |
| 3. | OASIS | "Delta" model yacht, HIN# 7010 |
| 4. | TOP DOG | "Westport" model yacht, hull series number US-WPS04012H516 |
| 5. | ANDIAMO | "Horizon" model yacht, hull series number TW-HRN76072C707 |
| 6. | KODIAK | (EX CATHERINE QUIGG), tug boat, MMSI# 366980210 |
| 7. | Unnamed | "Coastal" model yacht, hull series number QKP11465G617 |
| 8. | Unnamed | "Westport" model yacht, hull series number US-WPS07756H617 |
| 9. | Unnamed | "Westport" model yacht, hull series number US-WPS04014L516 |

9. The Charter, specifically the Recap that was drafted by Raven Offshore and/or its agent and accepted by IMC, identified the freight details as "lump sum US $575,000." *See* Exhibit A. The Recap also includes the following pertinent terms and conditions, in industry-standard shorthand:

> - owners to make available lifting equipment/materials as onboard
> - chrtrs will provide divers and any special equipment/materials needed other than equipment onboard vessel
>
> [***]
>
> Cargo: motor and sailing yachts on cradles
> - Charterers to have free use of **up to 2,000 m2 of space**. Same to be on deck or in vessel's #2 main hold at OOPT and as directed by Ows.

---

[1] There are a total of ten (10) yachts onboard the OCEAN GLORY. The REEL DEVOCEAN, an "Ocean" model yacht, should not be arrested, as it is not part of the Cargo.

>Ows open to midship stowage on & under deck.
>
>[***]
>
>- chrtrs to present final cargo list and proposed stowage for Master's review prior to loading.
>
>[***]
>
>- Freight: **lump sum US $575,000 Free in/out, lashed/secured/dunnaged Chrts acc.**
>For all **space used on or under deck exceeding ttl 2000 m2 freight will be US$175 per m2**.
>- **Freight 100 pct prepaid** into Owner's nominated bank account 7 days after receipt of owners invoice. **Freight deemed earned on pro rata loading** dnrcaovlonl.
>- express release congen **Bs/L to be released only after freight payment in owner's A/C**. BLs for all ports to be issued by chemainus agents ACGI.
>
>[***]
>
>- Otherwise as per raven 94 gencon cp last done logically amended to main terms (mv scl basilisk attached).

*Id.* (emphasis added).

  10. Loading operations with respect to the Cargo commenced in Nanaimo, British Colombia, on September 20, 2016, and were completed on September 23, 2016. According to a load report survey conducted on behalf of Intermarine and IMC by MGAMARINE, three distinct areas of the OCEAN GLORY were used for the stowage and securing of the Cargo for shipment. These areas included the entirety of the forward hatch cover for hold number one, hold number two in its entirety, and the number two hatch cover. According to the survey, a total of 2,2680.28 square meters of space was used for the stowage and securing of the cargo.

  11. As a result, Raven Offshore exceeded its free use of 2,000 square meters of space on the vessel by 680.28 square meters. According to the express terms of the Charter, Raven

Offshore therefore owes an additional $119,049.00 in freight for the carriage of the Cargo (680.28 additional square meters multiplied by $175.00 per square meter). *See* Exhibit A.

12. Intermarine, on behalf of IMC, issued an invoice on September 24, 2016, for the full amount of ocean freight (*e.g.*, the lump sum freight amount of $575,000.00 and an additional $119,049.00 for the excess space used). *See* Invoice, attached hereto as "Exhibit B." According to the terms of the Charter, payment was due within seven (7) days from the date Intermarine issued the invoice.

13. On or about October 4, 2016, Raven Offshore remitted $500,000.00 to Intermarine/IMC for the payment of ocean freight. Raven Offshore withheld $75,000.00 of the amount due and owing for ocean freight and has also failed to remit full payment of freight (totaling $119,049.00) in accordance with its use of the additional 680.28 square meters.

14. The *in rem* defendant, a cargo of motor and sailing yachts on cradles, is currently under the custody and control of IMC aboard the OCEAN GLORY, and will be located within this District in Port Everglades on or about October 16, 2016.

15. Raven Offshore, despite the terms and conditions of the applicable Charter Party and its incorporated Recap, has breached its contractual duties by failing to pay freight in the approximate amount of $194,049.00 to IMC in connection with the Charter.

### COUNT I – BREACH OF MARITIME CONTRACT

16. IMC incorporates and reasserts the allegations contained in Paragraphs 1 through 15 as if fully set forth herein.

17. IMC brings this claim *in personam* against Raven Offshore, as more fully set out above, because Raven Offshore entered into and breached a maritime contract with IMC by failing to satisfy its freight obligations.

18. IMC has performed all conditions precedent under the contract by making the OCEAN GLORY in all respects seaworthy; securing that she is properly manned, equipped and supplied; and giving free use of its cargo handling gear and of sufficient motive power to operate all such cargo handling gear. Raven Offshore, on the other hand, has failed to comply with the terms of the Charter by not paying the contractual freight when it became due.

19. Accordingly, Raven Offshore is in breach of the contract and is indebted to IMC for freight due and owing in the approximate amount of $194,049.00, plus certain other expenses.

## COUNT II – MARITIME ARREST OF CARGO – RULE C

20. IMC incorporates and reasserts the allegations contained in Paragraphs 1 through 19 as if fully set forth herein.

21. As noted above, on or about September 2, 2016, and at all relevant times, Raven Offshore entered into the Charter with IMC for the shipment of approximately nine (9) motor and sailing yachts from Nanaimo, British Columbia, to Port Everglades, State of Florida, and upon information and belief, Raven Offshore still holds title to the cargo being shipped. *See* Exhibit A.

22. The charter party and recap identifies the applicable freight rates, payment of freight, and contains the following lien clause in its terms and conditions:

> **8. Lien Clause.**
>
> The Owners shall have a lien on the cargo and on all sub-freights payable in respect of the cargo, for freight, deadfreight, demurrage, claims for damages and for all other amounts due under this Charter Party including costs of recovering same.

23. The Cargo was loaded aboard the M/V OCEAN GLORY between September 20th and 23rd, 2016, as she was afloat in the Port of Nanaimo. Raven Offshore, despite the terms and

conditions of the applicable Charter, has breached its contractual duties by failing to pay freight in the approximate amount of $194,049.00 to IMC under the charter party and recap.

24.     The outstanding freight consists of $75,000.00 that Raven Offshore has unilaterally withheld and an additional $119,049.00 that is due because the area of the Cargo exceeded the allotted amount of free space available to Raven Offshore—as stipulated in the Charter at 2,000 square meters—by 680.28 square meters. Based on the express terms of the Charter, Raven Offshore therefore owes IMC $175.00 per additional square meter.

25.     IMC has made amicable demand upon Raven Offshore regarding payment of the foregoing. To date, however, these outstanding debts have not been satisfied.

26.     IMC has duly performed its obligations under the controlling Charter by loading the cargo aboard the OCEAN GLORY; however, Raven Offshore has failed to perform its obligations and has therefore breached this maritime contract.

27.     By virtue of the terms and conditions incorporated in the Charter, Raven Offshore was on notice of IMC's right to lien the cargo for purposes of securing freight. Accordingly, IMC maintains a maritime lien on the cargo and is entitled to arrest the cargo that will be located within this District while this action is pending pursuant to Clause 8 of the terms and conditions of the Charter and pursuant to Supplemental Rule C (as well as by normal operation of law), and is also entitled to sell the cargo to satisfy the claims herein.

28.     IMC is not seeking this arrest for the purpose of injuring or harassing Raven Offshore.

29.     IMC will be prejudiced in its recovery against Raven Offshore absent an order of arrest.

30.     IMC seeks an order from this Court directing the Clerk of Court to issue a warrant of maritime arrest of the Cargo pursuant to Supplemental Rule C, arresting the nine (9) motor and sailing yachts on cradles onboard the M/V OCEAN GLORY for which freight has not been received.

31.     The Cargo is currently located aboard the M/V OCEAN GLORY, en route to Port Everglades, which is within this District, and due to arrive there on Sunday, October 16, 2016, while this action is pending.

32.     IMC avers that exigent circumstances exist that make this Court's review impracticable, and this Court respectfully should therefore direct the Clerk to immediately issue a warrant for maritime arrest of the cargo.

**WHEREFORE**, Industrial Maritime Carriers, L.L.C., respectfully demands judgment pursuant to Supplemental Admiralty Rule (E)(1) and prays as follows:

(a)     that process according to the practice of this Court be issued against Raven Offshore;

(b)     that Raven Offshore's property be arrested as set forth in this complaint, with interest and costs in an amount including:

(1)     $194,049.00, plus other associated costs and expenses;

(2)     attorneys' fees as determined to be reasonable by this Court;

(3)     costs and expenses *in custodia legis*, plus such additional costs and expenses as may occur during the pendency of this action;

(c)     that Raven Offshore's property as arrested herein be condemned and sold to satisfy any judgment;

(d) that IMC have pre- and post-judgment interest and such other and further relief as may be just and proper; and

(e) that this Court maintain jurisdiction over this matter through the entry of judgment or award for any current claims or those which may arise in the future, including appeals.

Respectfully submitted,

*/s/ Michael D. Ruel*
Michael D. Ruel (52835)
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
400 N. Ashley Drive, Suite 1000
Tampa, Florida 33602
Telephone: (813) 977-1200
Facsimile: (813) 977-1288
Emails: mruel@gallowayjohnson.com
jwaguespack@gallowayjohnson.com
dburr@gallowayjohnson.com
tampaservice@gallowayjohnson.com
ATTORNEYS FOR PLAINTIFF
INDUSTRIAL MARITIME CARRIERS, L.L.C.

OF COUNSEL:
Jason P. Waguespack, T.A.
Federal I.D. No. 268357
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139
Telephone: (504) 525-6802
Telecopier: (504) 525-2456
ATTORNEYS FOR PLAINTIFF
INDUSTRIAL MARITIME CARRIERS, L.L.C.